UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GERALD SULLIVAN | CIVIL ACTION |
| VERSUS | NO:    07-08163 |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO. and CHEVRON U.S.A. INC. | SECTION: "A" (4) |

### ORDER

Before the Court is a **Motion to Compel Completion of Plaintiff's Deposition at the United States District Court and for Sanctions (R. Doc. 12)**, filed by the Defendant, Chevron U.S.A. Inc., ("Chevron"), seeking an order from the court compelling the Plaintiff to complete his deposition and to sanction him for his conduct at the deposition. Chevron supplemented its motion in a Supplemental Memorandum in Support of Motion to Compel Completion of Plaintiff's Deposition at United States District Court and for Sanctions (R. Doc. 19). The Plaintiff, Gerald Sullivan ("Sullivan"), did not file a memorandum in opposition. The motion was heard with oral argument on July 16, 2008.

**I.     Background**

This action arises from the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, *et al*. (R. Doc. 1.)  On or about November 7, 2006, Sullivan alleges that he was injured on West Delta 109, Rig 203 ("West Delta") while in the course and scope of his employment for Automation U.S.A.

("Automation"). (R. Doc. 1.)

Sullivan contends that he was injured when he slipped and fell on fluid on the deck of the offshore platform, which resulted from operations carried out at the request of and by the Defendants. (R. Doc. 1.) Sullivan asserts that the fluid caused the deck to be unreasonably dangerous and because of the Defendants' negligence, he suffered severe and permanent mental and physical disabilities. (R. Doc. 1.) Sullivan seeks damages for his disabilities, pain and suffering, medical expenses, loss of earnings and earnings capacity, and loss of enjoyment of life. (R. Doc. 1.)

The instant motion arises from the events that transpired at Sullivan's deposition, on June 24, 2008, at 1:00 p.m. at the office of his attorney, Joseph W. Rausch ("Rausch"). During the deposition, the Defendants assert that Sullivan acted non-cooperatively, by arguing, asking questions, and making threatening gestures to the Defendants' counsel, James R. Silverstein ("Silverstein"), including standing up and clenching his fists. The Defendants maintain that Sullivan behaved wrongly, even though his own counsel repeatedly requested him to answer the deposition inquiries. Eventually, the Defendants maintain that they terminated the deposition when Sullivan made threatening gestures for a second time, and Sullivan's counsel agreed that the deposition should end.

The Defendants contend that Sullivan's friends or brothers also attended the deposition, and waited outside in the parking lot for the deposition to be completed. The Defendants allege that those individuals made comments to Silverstein when he entered to take the deposition.

In light of these contentions, the Defendants request that the Court compel Sullivan to complete his deposition in the Court's presence and to sanction Sullivan with the Defendants'

attorney's fees and costs for his conduct at the deposition and the necessity to continue deposition at a later time.  In their motion, the Defendants maintain that Rausch, Sullivan's counsel, handled the deposition professionally and ethically, but contend that Sullivan did not heed his counsel's advice, and continued to behave unprofessionally throughout the deposition.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 37 authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders. *Chilcutt v. U.S.,* 4 F.3d 1313, 1319-20 (5th Cir. 1993).  Specifically, "[i]f the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court."  Fed. R. Civ. P. 37(b)(1).  A "court's discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited."  *Chilcutt.* 4 F.3d at 1319-20.

**III.    Analysis**

After reviewing the deposition, the Court makes note of the various exchanges that evidence the participants' frustration during the deposition.  Towards the beginning of the deposition, Silverstein apparently took some papers that Sullivan was holding.  At that time, Sullivan stated, "I'd appreciate it if you wouldn't snatch them papers out of my hand like that, sir. That wasn't every polite of you."  (R. Doc. 19-2, p. 11.)  The transcript illustrates that Sullivan apparently became increasingly inpatient with Silverstein's repeated questioning and inquired, "Have you been paying attention to me?"  (R. Doc. 19-3, p. 13.)  It also appears that he sarcastically remarked "Oh, my God," (R. Doc. 19-2, pp. 25), and retorted, "Hell, I don't know."  (R. Doc. 19-2, p. 20.)

Sullivan further expressed his discontent during the deposition, when he repeatedly asked Silverstein whether he understood one of his answers:

> Q. Did you ask anyone to clean up the fluid that you saw on the main deck for the first time as you walked from the main living quarters to the medic's office?
> A. No. Did you understand that answer?
> Q. Yes. What does Automation--
> A. Did you understand that answer?
> Q What does Automation--you want to answer my question?
> A. Wait. Did you understand my answer, sir?
> MR. RAUSCH:
> We're going to--
> THE WITNESS:
> Did you understand my answer?
> MR. RAUSCH:
> Time out.
> THE WITNESS:
> There was other people that asked them to clean that up, plus myself. I don't know if you--
> MR. SILVERSTEIN:
> I would move that the answer be struck as unresponsive.
> THE WITNESS:
> I'm trying to find out if he understood what my answer was.
> MR. RAUSCH:
> Come on. Come on. He gets paid by the hour. We'll be here all night. Just listen to the question, answer it completely, we move on. We'll be done.

(R. Doc. 19-3, pp. 17-18.)

Sullivan also attempted to ask Silverstein questions during the deposition. Sullivan told Silverstein at one point in the deposition, "I told you yes. I answered your question, sir. You won't answer mine, though." (R. Doc. 19-2, p. 15.) Similarly, when the deposition was reaching its end, and it became increasingly clear that the deposition would not progress forward, Sullivan again attempted to ask Silverstein a question:

> MR RAUSCH:
> Let's get it done. Come on, work with us.
> MR. SILVERSTEIN:
> If this happens one more time--
> MR. RAUSCH:
> Work with us.
> THE WITNESS:

>   Can I ask you one question, please, sir?
>   MR. RAUSCH:
>   No.
>   MR. SILVERSTEIN:
>   I'm stopping the deposition.
>   MR. RAUSCH:
>   No questions. No questions. . . . Answer the question. And we'll get through, and we'll get out.
>   THE WITNESS:
>   I am answering his question. Jesus Christ.
>   Mr. RAUSCH:
>   Listen and answer the question.

(R. Doc. 19-3, pp. 21-22.)

Additionally, Sullivan appeared to address the court recorder who was transcribing the deposition, and his counsel attempted to calm him and reassure him that the recorder was transcribing appropriately.

>   THE WITNESS:
>   I did answer it truthfully. But to my understanding, I answered it truthfully.
>   Now can you write that in your little book, please? No, you don't want to write that in your little book.
>   MR. RAUSCH:
>   Wait, wait. It's going down on the record what you said. That you didn't understand or as best to your knowledge that's the way you answered it.
>   THE WITNESS:
>   Right. Some of this stuff. I don't understand it.
>   MR. RAUSCH:
>   That's the way you answered it, as best to your knowledge. It's going right down on the record.
>   THE WITNESS:
>   I don't understand what the question is.
>   MR. RAUSCH:
>   Whatever he writes down there, it doesn't matter. It doesn't matter. We're not here to argue or fight.

(R. Doc. 19-2, pp. 15-16.)

Meanwhile, Silverstein repeatedly requested Sullivan to "answer" or "listen" to his inquiries, and not to interrupt. Similarly, Rausch pleaded with Sullivan to respond to Silverstein's inquiries

5

and for Silverstein to continue forward with the deposition. However, as a result of the continuing hostilities and breakdown in communications, Silverstein expressed his desire to terminate the deposition and seek the Court's intervention:

> MR. SILVERSTEIN:
> I'm going to terminate the deposition, and we're going [to] go back with the court if he raises his voice to me one more time--
> MR. RAUSCH:
> Wait, it's--
> THE WITNESS:
> I answered you that three times, sir.
> MR. SILVERSTEIN:
> I'm not going to be spoken to with that--
> MR. RAUSCH:
> The question is very, very simple.
> MR. SILVERSTEIN:
> I'm going to go to the Judge and sanction him.
> THE WITNESS:
> What he's doing, he's trying to intimidate he.
> MR. RAUSCH:
> He's not intimidating anybody.
> THE WITNESS:
> I answered him.
> MR. RAUSCH:
> You're not intimidating anybody.

(R. Doc. 19-3, pp. 19-20.)

Eventually, the deposition devolved as Sullivan began to exhibit his agitation during the deposition with inappropriate language including, "shit," "Jesus Christ," and "hell." (R. Doc. 19-2, pp. 24-25; R. Doc. 19-3, pp. 23-24, 30.) Particularly, the Court notes the following exchange:

> Q. Did you at any time think to yourself, I better be careful, because I'm stepping in a clear liquid substance that I had never seen before; and it's gotten on my feet?
> Did you ever think that?
> A. Are you finished?
> Q. Yes.
> A. No, I never did, because I was out there 22 days and walked through all kind[s] of--

      Q.       That's not answering my question.
      A.       See, you don't want to hear my side of the story.
              MR. RAUSCH
              Come on. He gets paid by the hour. Come on, sit down. Let's get this done.
Just answer the question.
              THE WITNESS:
              I mean, Jesus Christ. I answered his question, and he rephrases the same shit.
              MR. RAUSCH:
              Answer the question.
              THE WITNESS:
              I didn't ask to get hurt. Why do I got to go through this shit?
              BY MR. SILVERSTEIN:
              Listen, you're the one who filed the lawsuit Mr. Sullivan.
              MR. RAUSCH:
              Come on. Let's go.
              THE WITNESS:
              I didn't file no lawsuit.
              MR. RAUSCH:
              Let's go. Let's go.

(R. Doc. 19-3, pp. 15-16.) The Court also notes this following exchange:

      A.       . . . You're badgering me, man.
              MR. SILVERSTEIN:
              That does it. We're going to take this up with the Judge.
              THE WITNESS:
              Take it up with the damn, Judge.

(R. Doc. 19-9, pp. 29-30.) Sullivan further stated, "I answer your question, and you ask me the same question again. . . . You ask me the same damn question again." (R. Doc. 19-3, p. 30.)

Despite repeatedly requests by Rausch for the parties to complete the deposition and for the Defendants to "work with" him and Sullivan, Silverstein maintained, "If this happens one more--let me say this on the record. . . . We're going to come back and do this on another date. I'm not going to be spoke--nobody's going to talk to me like this. . . . We're going to come back, and it's going to be at his cost. I'm going to sanction him. I'm going to bring this to the Judge's attention." (R. Doc. 19-3, pp. 20-21.)

7

After reviewing the transcript, the Court concludes Sullivan's deposition testimony is inflammatory and his behavior at the deposition is inappropriate. The deposition transcript recorded Sullivan's increasingly frustrated behavior and his use of foul language, which was not befitting of formal judicial proceedings. The Court does not tolerate use of such abusive language by any of the parties involved. Sullivan does not dispute the Defendants' right to depose him for the purposes of this litigation. Furthermore, the attorneys acted in accordance with normal standards, as counsel often ask repeated questions during a deposition to parse out the facts of a case. The Court also concludes that the attorneys appropriately terminated the deposition and brought Sullivan's allegedly harassing behavior to the Court's attention.

After methodically reviewing the transcript, the Court orders Sullivan to submit to a continuation of his deposition. Sullivan is ordered to behave appropriately during the deposition, in a manner suitable for the proceedings. Furthermore, to impress upon Sullivan the gravity of behavior at a deposition, the Court orders his appearance for his deposition in the courtroom of the undersigned.

As for the Defendants' allegations that Sullivan made threatening gestures, the Court denies the Defendants' requested relief. The Court cannot read actions from a deposition transcript, which merely records the parties' verbal exchanges. Here, the Defendants assert that Sullivan made threatening gestures towards Silverstein. Towards the end of the deposition, Silverstein states, "I'd like the record to reflect that the witness just made a threatening gesture towards--" (R. Doc. 19-3, p. 31.) Sullivan, however, replies, "A threatening gesture? I'm ready to go. . . . I'm ready to go. I ain't got time for them to ask me the same question 10 times. And I did not make no threatening gesture to you pal." (R. Doc. 19-3, p. 31.) At the hearing, Sullivan's counsel maintained that

Sullivan was in back pain during the deposition, and any threatening gesture of suddenly rising, was actually him attempting to relieve his back pain. In fact, the deposition reflects that Sullivan requested to "get up again for a minute" because his was "getting aggravated." (R. Doc. 19-2, p. 17.) In light of these ambiguities, the Court declines to find that Sullivan made the alleged "threatening gestures" because it is unclear from the written transcription of the deposition, what exactly transpired the day of the deposition.

Ultimately, the Court orders Sullivan to submit to a continuation of his deposition, to take place in the courtroom of the undersigned magistrate judge.[1]

Finally, the Court concludes that sanctions in the form of attorney's fees and costs are not appropriate here. While Sullivan behaved wrongly and hindered the expedient taking of his deposition, he ultimately responded to Silverstein's inquiries, and in fact, answered responsively to the majority of the questions. Furthermore, Sullivan did not disobey a court order mandating the deposition. Therefore, the Court denies the Plaintiff's motion for attorney's fees and other reasonable expenses in bringing this subject motion.

---

[1] At the hearing, Rausch requested the Court to continue its hearing on the matter because of a pending motion before the presiding U.S. District Court Judge Jay C. Zainey ("Judge Zainey") that he had filed to withdraw from representing Sullivan in the matter. However, the Court concluded that the instant matter was ripe for adjudication, and therefore, it was unnecessary to wait for Judge Zainey's ruling on the matter. To accommodate to the parties' positions, the Court deferred the time period for which to schedule the continued deposition. The Court specified that the deposition should be scheduled after thirty (30) days after Sullivan retains new counsel, should Judge Zainey grant the request or within the fifteen (15) days provided for by Judge Zainey, whichever was earlier.

On July 22, 2008, Judge Zainey granted counsel's motion to withdraw (R. Doc. 20), and enrolled Rhett E. King and J. Bart Kelly as new counsel for Sullivan (R. Docs. 20, 22) at that time. Thereafter, the Defendants provided the Court with a courtesy facsimile, indicating that the deposition will be scheduled for Thursday, September 25, 2008. In light of these developments, any issue as to the timing of the deposition is now moot.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Chevron's **Motion to Compel Completion of Plaintiff's Deposition at the United States District Court and for Sanctions (R. Doc. 12)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS GRANTED** to the extent that Sullivan must submit to a continuation of his deposition on **Thursday, September 25, 2008**, at **9:30 a.m**. in the undersigned United States Magistrate Judge's Courtroom located at 500 Poydras Street, Room B-431, New Orleans, Louisiana.

**IT IS DENIED** as to the Defendants' requests for sanctions associated with the continuation of the deposition.

New Orleans, Louisiana, this 11th day of August 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**